LAMAR HARDWOOD Co. *v.* CASE.*

(Division B.   April 19, 1926.)

[107 So. 868.   No. 25658.]

1. ATTORNEY AND CLIENT. *Attorney, contracting for contingent fee, and taking assignment of portion of right of action, is not deprived of right of action thereon because third party, without his knowledge, authority, or connivance, promised benefits to client for placing cause of action with such attorney, if such promise was not disclosed at or before time of making contract (Code 1906, sections 216, 231 [Hemingway's Code, sections 190, 208]).*

An attorney who makes a contract with a client for a contingent fee, taking an assignment of a portion of the right of action as his fee, is not deprived of his right of action thereon by the fact that a third party made promises of benefits to the client, if the client would place his cause of action with said attorney for suit thereon, if the attorney did not know of said promises and did not authorize such party to solicit the employment, and did not in any manner connive with such person, and such promise was not disclosed at the time of the making of the contract or prior thereto.

2. TRIAL. *Instruction that if contingent fee contract was procured by attorney's solicitation, either personally or through agent, re-*

*covery could not be had thereon whether promises were held out to client or not, was sufficient, and refusal of other instructions with reference to such agreement was not reversible error (Code 1906, sections 216, 231 [Hemingway's Code, sections 190, 208]).*

Where an attorney brings a suit against a person or corporation for personal injury to his client, a part interest in the cause of action constituting his fee, and the defense is that the contract assigning such interest was solicited by the attorney or his agent in violation of clause (6), section 190, Hemingway's Code (section 216, Code of 1906), and section 208, Hemingway's Code (section 231, Code of 1906), and the court gives the following instruction for the defendant:

"The court instructs the jury for the defendant that, if the contract in question was procured by the plaintiff's solicitation, either personally or through an agent, then it is void, and recovery cannot be had thereon, and this is true whether any promises were held out to said Stallings or not."

This court will not reverse for not giving other instructions with reference to such agreement, as this instruction sufficiently announced the law applicable to the case.

3. ATTORNEY AND CLIENT. *Settlement for injury with notice of contingent fee contract with attorney for share of recovery does not affect attorney's right to recover on his assignment of part of cause of action.*

Where a person, injured by the negligence of another, assigns a part of his cause of action to his attorney in payment for the services of the attorney, and the person or corporation causing the injury has notice thereof, and after such notice of such assignment settles the cause with the injured party without consulting the attorney, such settlement does not affect the right of the attorney to recover on his part of the cause of action covered by the assignment.

4. TRIAL. *All instructions are to be construed as whole, one as modifying, explaining, or qualifying another; if instructions as whole correctly announce applicable law, imperfection in single instruction will not warrant reversal.*

All instructions given by the court in a suit being tried are to be considered together and construed as a whole, one as modifying, explaining, or qualifying another; and, if the instructions taken as a wholly correctly announce the law applicable to the case, this court will not reverse the judgment because of an imperfection in a single instruction.

5. APPEAL AND ERROR. *Supreme Court will not revise discretion of trial court as to controlling argument of counsel, as to division of time between attorneys appearing on same side, or with reference to opening and closing case, in absence of showing that court's action was prejudicial to complaining party, and such prejudice must appear from record in case.*

This court will not undertake to revise the discretion of the trial court in the matter of controlling the argument of counsel as to the division of time between attorneys appearing on the same side, nor with reference to opening and closing the case, in the absence of a showing that the court's action was prejudicial to the right of the complaining party, and such prejudice must appear from the record in the case.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 798, n. 21-22; p. 810, n. 47; p. 827, n. 9; Attorney and Client, 6 CJ, p. 740, n. 2; p. 790, n. 47; Trial 38Cyc, p. 1711, n. 19; p. 1779, n. 75.

APPEAL from circuit court of Clarke county.

HON. R. M. BOURDEAUX, Judge.

Action by H. F. Case against the Lamar Hardwood Company to recover by the client on a contingent fee contract with plaintiff's client, of which defendant had notice at the time of settling action. Judgment for plaintiff, and defendant appeals. Affirmed.

*Stevens & Heidelberg,* for appellant.

As will be seen from the statement of facts, there were two things sharply at issue: (1) Whether Dr. W. C. Norris, claiming to act as agent of H. F. Case, came to Stallings' home and there solicited the case and made the promises set forth; and (2) whether admitting that Norris did do the things outlined, he was authorized by Case to do this and was, therefore, the agent of Case in so doing.

With this state of facts, the defendant asked for the following instruction: "The court further instructs you for the defendant that if you believe from the evidence that Stallings was induced to sign the contract in this cause by one Dr. Norris claiming to represent the plain-

tiff, soliciting same and promising him that if he would execute the contract and employ the plaintiff that he would be taken care of pending the litigation and furnished with medical attention by the plaintiff, and but for the representations and promises Stallings would not have executed same, then said contract was void and the plaintiff cannot recover thereon.'' This instruction was refused by the court.

The following instruction was also asked and refused: ''The court instructs the jury that if you believe from the evidence that the contract in this case was procured through solicitation and the said Stallings induced to sign it by reason of promises held out to him by Dr. Norris, then in law it is void and of no effect even though the plaintiff himself did not authorize Dr. Norris to solicit the employment for him nor to offer any promises.''

It is against public policy for anyone to stir up strife and litigation. It is against public policy regardless of any statute on the subject. Certainly, it is true that the public policy of this state will not permit anyone to go to the extent of offering promises, rewards, money or other valuable consideration for the purpose of inducing another to begin litigation. If an attorney himself were to do it, he would not only be subject to disbarment, but would also be guilty of a misdemeanor.

If it is against public policy for one to go out and solicit lawsuits for an attorney and hold out promises and solicitations to the solicited party, then it is bound to follow that a contract signed by such solicited party under such circumstances and because of such inducement is utterly null and void even though the attorney himself did not participate in the solicitation nor offer the reward offered.

In order for the plaintiff to have recovered in this case, it was necessary for him to prove first an original liability on the part of the appellant to Stallings; and, second, a valid contract assigning an interest in the cause of action to him.

It will be noted that the two instructions on a safe place to work leave out of consideration altogether the invalidity of the contract in question. True it is that the plaintiff procured another instruction which told the jury that all of the instructions must be construed together, and that unless the plaintiff's contract was legal, he could not recover, but we submit that this instruction did not cure the error of these two instructions.

Another assignment of error which we desire to submit is shown by the special bill of exceptions. The court limited the time for argument of this case to one hour and a half to the side. When this division was made the plaintiff's attorneys announced in open court that they would use only thirty minutes in the opening argument and save one hour for the concluding argument, and thereupon the defendant immediately objected and insisted that at least one-half the time allowed should be used in the opening argument. This objection was overruled by the court.

The court should bear in mind that a closing argument, as has been held by this court, is merely for the purpose of answering the argument on the other side. If this case needed but thirty-seven minutes for an opening presentation thereof, certainly it did not need fifty-three minutes to answer the argument. Only one argument had been made for the defendant.

This court should take this occasion to point out again to the circuit judges of this state that the sole and only purpose of a closing argument is to reply to the arguments advanced on the other side, in order that the circuit judges will in the future prohibit attorneys representing the plaintiff from taking such an unfair division of time and obtaining such an unfair advantage as was obtained in this case.

*Martin Miller, M. W. Reilly, Wm. Edwards, J. D. Fatheree* and *H. L. Miller,* for appellee.

I.   We admit that counsel is correct that it is against the policy of the state for one to stir up strife and litigation, but it is not against the public policy of this state, nor any other state, for a doctor to advise a friend that it is necessary for his welfare for him to go off for treatment.  It is not against the public policy of this state for a doctor, or anyone else, in good faith to advise a friend to file a lawsuit and what lawyer to get and that perhaps if he should get this lawyer, the lawyer would assist him in a financial way if it was necessary for him to get the proper treatment, and the court so advised the jury by an instruction of which even counsel for appellant does not complain.

In the first place, there was no evidence on which to base the instructions complained of.  In the second place, Case and Norris both testified that Case knew nothing about Stallings, or Stallings' injuries, or illness, or that Dr. Norris was going to his home, or did go to his home, or that Stallings was coming to see Case, until shortly before Stallings walked into his office, and Stallings did not even testify that Norris told him that Case sent him out there to see him.  If everything that counsel claim Norris said was true, this would not vitiate a contract when Case was not a party to it and knew nothing of it. The contract could be vitiated only on the ground that Norris was acting as Case's agent.  In the first place, agency cannot be proved by the statements of an agent alone.   In the second, taking Stallings' testimony as absolutely true, counsel's contentions as to what was said are not borne out, and Norris was guilty of no improper conduct.

II.   Counsel complain of the following instructions given to appellee relative to furnishing Stallings a reasonable place in which to work.  We take the position

that the instructions complained of were correct for the reason that there was not sufficient evidence to justify submitting to the jury the issue raised by appellant's pleadings, as to the legality of the contract between Case and Stallings. See *Moody* v. *Harper,* 38 Miss. 599; sec. 208, Hemingway's Code; sec. 190, Hemingway's Code.

The above sections are the only laws in the state of Mississippi prescribing the duties of an attorney. There is not a hint in the record that Mr. Case violated his duty under section 190 or violated the prohibitions of section 208. Neither Mr. Stallings nor his wife claimed that either Dr. Norris or Mr. Case ever told Stallings that *if he would place his lawsuit in Mr. Case's hands,* he would receive medical attention and be taken care of during the pending litigation. The most that can be said of Norris' statements is that he told Stallings that they wanted him to have medical attention, that appellant was not going to do anything for him, and that he wanted Stallings to turn his case over to Mr. Case. He did not even contend that Case sent him out to see Stallings.

Taking the evidence *competent and incompetent* of appellant as being true and drawing the strongest inferences therefrom that such evidence warrants, the most that can be said is that Dr. Norris advised Stallings that they wanted him to have medical attention, and that he wanted him to sue the Lamar Hardwood Company, and that Mr. Case said, after Stallings said he wanted to employ Mr. Case, that Martin Miller would be associated with him in the trial of the cause and that they would get busy and give him medical treatment and take care of him until the trial came up and judgment was had.

The proceeds of two notes were turned over to Stallings and used by him in defraying his operation and hospital expenses while in New Orleans and taking care of Stallings' family until his return from the hospital. The record does not bear out the inferences that this money was a gift to Stallings, but only the reasonable conclusion that it was a loan, not from the attorneys, but from

a bank. See 11 C. J., p. 245; *Gilman* v. *Jones,* 5 So. 787; *Taylor* v. *Perkins,* 157 S. W. 125; *Johnson* v. *Great Northern Ry.,* 151 N. W. 125; *Ranson* v. *Cutting,* 81 N. E. 384; *Wallace* v. *Chicago, M. & St. P. Ry. Co.,* 84 N. W. 662; *Northwestern S. S. Co.* v. *Cochran,* 191 Fed. 146.

The *Cochran case, supra,* directly holds that the court was right in charging that the evidence failed to show that the contract of employment in which the attorney advanced the costs of the suit was champertous. Under the authority of this case and the other cases cited above the lower court clearly erred in submitting to the jury the question of whether or not the contract of Case was illegal and void.

Even if the instructions complained of, standing alone, were incorrect, which we contend they were not, they were cured by appellee's instruction that all of the instructions must be construed together and that appellee could not recover unless his contract was legal. *Stratton Cripple Creek Mining Co.* v. *Ellison,* 94 Pac. 303; *City of Danville* v. *Thornton,* 66 S. E. 839; *E. T. & H. K. Ide* v. *Boston & Maine,* 74 Atl. 401; *Nordyke & Mormon* v. *Whitehead,* 106 N. E. 867.

III.    The only other contention raised by appellant is that the opening argument of appellee consumed only thirty-seven minutes when counsel for appellant demanded of the court that he require counsel for appellee in making the opening argument to use one-half of the time allowed, or forty-five minutes. This contention of appellant is not supported by any authority in any lawbook or in any court. Is counsel serious when he asks the court to reverse this case because the opening argument fell short by eight minutes of what he wanted it to?

There is no merit in appellant's appeal.

Argued orally by *Martin Miller,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was plaintiff below and sued the appellant for damages to Howard S. Stallings, who was in-

jured while in the employ of the appellant, and who, after the injury, made a contract with the plaintiff, Case, an attorney, in the following words:

"Know all men by these presents: That I, Howard S. Stallings, have a certain claim, right or rights of action and demands against the Lamar Hardwood Company, of Horton, or Quitman, Clarke county, Mississippi, for injuries sustained by me while in the employ of said Lamar Hardwood Company when I was struck by an object on my leg and my leg bruised and broken on or about the 25th day of March, 1924, and whereas I have employed H. F. Case, lawyer of Quitman, in said county and state, to prosecute said claim against said company for me, and whereas said H. F. Case, lawyer, has agreed to render me faithful services in the prosecution and settlement of my said claim: Therefore I do hereby transfer and assign unto the said H. F. Case one-half or fifty per cent. (50%) of my said claim against said Lamar Hardwood Company, and I do hereby empower said H. F. Case to do any and everything necessary and proper to efficiently handle my said claim, giving him full control of same. However, it is distinctly understood and agreed that said claim is not to be settled or compromised without mutual consent of both parties hereto. And the said H. F. Case, lawyer, does hereby promise and agree, in consideration of said assignment, to faithfully prosecute said claim and do everything necessary and proper to efficiently handle same.

"In witness whereof, we, Howard S. Stallings and H. F. Case, do hereunto set our hands in duplicate this the 25th day of June, 1924.

"[Signed] HOWARD S. STALLINGS,
"H. F. CASE."

On the day following the execution of this contract, Case notified the appellant of his assignment to a one-half interest in the injury to Stallings, which letter was received by the appellant. Subsequently the insurance company or agency which insured appellant against lia-

bility in such cases sought to adjust the damages with Case, but, failing to do so, took up with Stallings personally the adjustment of the matter and settled with Stallings at and for the sum of two thousand dollars and took a release. Thereafter Case brought suit against the appellant for his one-half interest in the said damages under said contract, making said contract and also the letter giving notice of his assignment to a one-half interest in the cause of action exhibits to his declaration.

The defendant pleaded the general issue and gave notice thereunder, under the statutory practice of this state of giving notice under the general issue in lieu of affirmative matter usually set up by special pleas. In this general notice the defendant gave notice that it would prove the alleged contract of assignment upon which plaintiff based his cause of action to be utterly null and void in this, that the plaintiff was a duly licensed and practicing lawyer of this state, and as such was required to obey the law of the state, particularly with reference to the duty of an attorney; that among other duties prescribed by law for an attorney is "to encourage neither the commencement nor continuance of an action or proceeding from any motive of passion or personal interest," and that it is against the public policy of this state for an attorney to solicit cases, directly or through an agent, or in any other manner to encourage litigation; that the defendant would offer evidence to prove that the plaintiff both personally and through an agent solicited Stallings to enter into the contract relied upon by the plaintiff and encouraged said Stallings to bring a lawsuit against defendant for his alleged injuries. The notice set out with more or less detail defendant's contention that Case, through a physician, had solicited Stallings to employ Case as an attorney to prosecute said suit for damages, and offered certain inducements for him to do so. It is unnecessary to set out in detail the allegations with reference thereto. This notice constituted one of the principal issues in the trial of the law-

suit and constitutes the principal ground for reversal here.

There was a sharp conflict in the testimony on both issues, that of liability for Stalling's injuries, and on the question as to whether Case's contract was procured by means of unlawful solicitation so as to defeat his right of recovery. We will not undertake to set out in full the substance of the testimony upon this issue. Suffice it to say that the testimony with reference thereto was such as to make the question proper for the determination of the jury.

The appellant requested the following instructions on the question as to whether the contract which Case had with Stallings was procured in violation of the public policy of the state evidenced by certain statutes:

"The court further instructs you for the defendant that, if you believe from the evidence that Stallings was induced to sign the contract in this cause by one Dr. Norris, claiming to represent the plaintiff soliciting same, and promising him that if he would execute the contract and employ the plaintiff that he would be taken care of pending the litigation and furnished with medical attention by the plaintiff, and but for the representations and promises Stallings would not have executed same, then said contract was void, and the plaintiff cannot recover thereon.

"The court instructs the jury that, if you believe from the evidence that the contract in this case was procured through solicitation and the said Stallings induced to sign it by reason of promises held out to him by Dr. Norris, then in law it is void and of no effect, even though the plaintiff himself did not authorize Dr. Norris to solicit the employment for him nor to offer any promises."

These instructions were refused by the court.

Appellant was given the following instructions upon that proposition of law:

"The court instructs the jury for the defendant that, if the contract in question was procured by the plaintiff's

solicitation, either personally or through an agent, then it is void, and recovery cannot be had thereon, and this is true whether any promises were held out to the said Stallings or not.''

Section 190, Hemingway's Code (section 216, Code of 1906), defining the duties of attorneys, in part, reads as follows:

''(6) To encourage neither the commencement nor continuance of an action or proceeding from any motives of passion or personal interest;

''(7) Never to reject, for any consideration personal to themselves, the cause of the defenseless or oppressed.''

Section 208, Hemingway's Code (section 231, Code of 1906), reads as follows:

''It shall be unlawful for an attorney at law, either before or after action brought, to promise, or give or offer to promise or give, a valuable consideration to any person as an inducement to placing, or in consideration or having placed in his hands, or in the hands of any partnership of which he is a member, a demand of any kind, for the purpose of bringing suit or making claim against another, or to employ a person to search for and procure clients to be brought to such attorney.''

We think that the instructions requested and refused were not accurate statements of law applicable to the case. An attorney who makes a contract with a client for a contingent fee is not to be deprived of his contract and his fee because some person, without his knowledge, connivance, or consent, makes representations with reference to the attorney or to advantages to the client that may accrue by reason of the employment of the attorney, or considerations beneficial to the client which the attorney will confer or give to the client, if the attorney had no knowledge of such statements or representations. The attorney is not required to answer for the sins of other persons, unless he has done something to cause or promote such delinquencies or sins.

We think the law as given to the defendant upon this proposition gives him the benefit of all that he was entitled to have upon the question. The jury fully understood that, if the plaintiff had solicited the contract either by himself or through an agent, he could not recover thereon. The conflict in the evidence made the jury the judges of what the truth was with reference thereto, and we are unable to say that the jury reached the wrong result.

The appellant next complains of the instructions given for the plaintiff, to-wit:

"The court instructs the jury that, if you believe from the preponderance of the evidence that the defendant failed to use reasonable care to furnish H. S. Stallings a reasonably safe place in which to work, and that he was injured as a proximate result of such failure, then it will be your duty to find for the plaintiff in this case.

"The court instructs the jury for the plaintiff that, if you believe from a preponderance of the evidence that the defendant failed to exercise a reasonable care to keep the piston rod machinery connected therewith in a reasonably safe condition, and that such failure, if any, on the part of the defendant was the proximate cause of the injuries to H. S. Stallings, then it will be your duty to find for the plaintiff in this case."

The criticism made of these instructions is in part as follows:

"It will be noted that the two instructions above quoted leave out of consideration altogether the invalidity of the contract in question. True it is that the plaintiff procured another instruction which told the jury that all of the instructions must be construed together, and that unless the plaintiff's contract was legal he could not recover, but we submit that this instruction did not cure the error of the two instructions quoted above. The plaintiff procured fourteen instructions in this case. The defendant procured eight. The jury then was given a total of twenty-two different instructions. The trial lasted

143 Miss.—19.

two days.  An examination of the record in this case disclosed that it is in two volumes and contains three hundred and forty-five pages.  Certainly a jury composed of the character of citizens which this court knows ordinarily serve upon juries, farmers, mechanics, and men from all walks of life, men who are unversed in court and court proceedings, should not be given instructions as many in number as were given in this case and told that all twenty-two instructions must be read and considered together, unless every instruction granted clearly announced the law on the subject attempted to be covered.''

As indicated in the brief from which we have quoted, the plaintiff procured instructions fourteen in number and had covered the contract feature of the case by appropriate instructions.

We have often announced in this court that the instructions must be taken together and be construed as a whole, one as modifying, explaining or qualifying another; and, if the instructions taken as a whole correctly announce the law applicable to the case, we will not reverse the judgment because of an imperfect single instruction.

Under the laws of this state the jury is required to be composed of qualified electors of good intelligence, sound judgment, and fair character, and such persons are certainly supposed to be able to understand the English language and to understand and harmonize the instructions in the case.  It is difficult to announce all of the law applicable to a case in a single instruction, and it is customary to give separate instructions on different features of a case.  Each side presents instructions applicable to its theory and the whole number of instructions go to the jury with the approval of the circuit judge.  So we think there was no reversible error at least in the plaintiff's instructions.

It is next assigned for error that when the testimony closed the court fixed the time for argument at one and one-half hours to the side; that when this announcement was made the plaintiff's attorneys announced in open

court they would use only thirty minutes in the opening argument and save one hour for the concluding argument, whereupon the defendant objected and insisted that at least one-half of the time allowed should be used in the opening argument of the plaintiff, which objection was overruled; that in the opening argument one of plaintiff's attorneys used only thirty-seven minutes, leaving fifty-three minutes of the time allotted to be used by plaintiff's attorney, who closed the argument for the plaintiff, and who used the entire fifty-three minutes.

The arguments are not in the record and we are unable to say from the record that the case was not clearly opened by plaintiff's attorney in his opening argument. Much can be said in a period of thirty-seven minutes by a skillful advocate. Sometimes a long speech is not as lucid as a short one. As an appellate court we will not undertake to control the discretion of the lower courts in the matter of regulating the arguments, unless it is shown by the record that prejudice resulted to the complaining party by such rulings, and such is not shown in the record before us. We, of course, have no very clear conception of what was said by either attorney as we are left to our imagination, having only the evidence in the case before us, with such personal knowledge as we may have of the attorneys in the case.

There is therefore no merit in this assignment of error, and the judgment of the court below will be affirmed.

*Affirmed.*